RICKEY et al., Appellants, v. BARNES et al.

### Division One, May 21, 1902.

Conveyance: INCAPACITY OF GRANTOR: DEAF AND DUMB. Where there was abundance of evidence, if believed, to have justified the court in finding that a deaf and dumb grantor knew how to express his wishes concerning the disposition of his property, and that the justice who wrote the deed of gift disposing of it was well acquainted with him, and understandingly communicated with him and got his idea and purpose correctly before writing the deed, and after it was written but before it was signed conveyed to the grantor its purport, and the evidence was largely oral, the Supreme Court will defer to the decision of the trial court holding that the grantor was shown to have sufficient capacity to make the deed.

Appeal from Boone Circuit Court.—*Hon. Jno. A. Hockaday,* Judge.

AFFIRMED.

*W. M. Williams* and *C. B. Sebastian* for appellants.

(1) Elias Barnes, being a deaf mute, was prima facie incompetent to make a contract, and the burden of showing his competency in this regard was on the defendants. Collins v. Trotter, 81 Mo. 282; In re Perrine, 5 Atl. 579; 1 Greenleaf on Evidence, sec. 366. (2) The disposition of this case involves an examination of the evidence. Elias Barnes, the grantor in the deed, was deaf and dumb; could not read or write, had never been educated in the "sign language," and was not in the habit of transacting his own business. A great majority of the witnesses testified that in their opinion it would be impossible to communicate to him by signs the con-

tents of this conveyance, so as to enable him to comprehend the provisions thereof. None of his kinsfolk was present when this deed was made. It was prepared and executed in the presence of those who were to take under it, and who were to be benefited by it. Plaintiffs insist that under the evidence the grantor was incapable of executing the deed, and that the decree below should be reversed.

*J. H. & H. D. Murry* for respondents.

(1) The fact that Elias Barnes was partially deaf and dumb did not render him incompetent to make the deed in controversy. In the early history of the law, a person deaf and dumb was, perhaps, presumed to be incompetent to make a contract, though such presumption could be overcome by proof of understanding. The modern doctrine, however, is that no such presumption exists, and it has been repeatedly held that a deaf and dumb person may execute a deed which will be valid and binding. Morrison v. Morrison, 27 Gratt. (Va.) 190; State v. Howard, 118 Mo. 143; Brown v. Brown, 3 Conn. 299; Barnett v. Barnett, 54 N. Car. 221; 8 Am. and Eng. Ency. of Law (2 Ed.), 842-3. (2) Whether the grantor, Elias Barnes, had an understanding and capacity sufficient to enable him to make the deed in controversy, was a question of fact, and was submitted to the trial court. The witnesses were all before the trial judge, in person. He heard them, and saw them upon the witness stand, and observed their manner and demeanor—saw and heard witnesses explain how Elias Barnes communicated his wishes by means of signs —and concluded in favor of the truth of the defense. The one who saw and heard the witnesses as they gave their testimony is the one best qualified to judge of their credibility and the weight to which their testimony was entitled. It is well settled in this State that the finding of the chancellor will be deferred to by the appellate court, unless he has mani-

festly disregarded the evidence. Hartley v. Hartley, 143 Mo. 216; Beach's Modern Eq. Prac., sec. 973; Taliaferro v. Evans, 160 Mo. 390; Shanklin v. McCracken, 151 Mo. 587.

ROBINSON, J.—This is a suit in equity instituted by plaintiffs (two nieces of Elias Barnes, now deceased, and their husbands) against Sallie Barnes, the widow of said Elias, and three grandchildren of said Sallie Barnes, to have set aside a deed to certain lands in Boone county, Missouri, made and executed by said Elias Barnes on June 8, 1891, containing the following provision, to-wit:

"Now be it understood that Elias Barnes shall hold and have support from above land during his life, at his death Sallie Barnes, his wife, shall have the sole right, title and interest; at Sally Barnes' death, Flora Statts shall come into possession of above land and shall have the right and title to same, to her heirs, if she, Flora Statts leaves no heirs at her death then the right, title and interest shall go to her husband, Jacob Statts, to him and his heirs forever."

The grounds set out in the petition for the relief sought is, "that the said Elias Barnes was and had been for a number of years previous to his death, deaf and dumb, and was uneducated in the art of communicating by signs, and could not write or read and was without means of imparting or receiving information to enable him to transact his general business." The petition further charges that the said Barnes was incapable of making a deed, and that the conveyance before referred to was obtained from him by the fraud of the defendant, Sallie Barnes, and closed with a prayer that the said pretended deed be set aside and for naught held, and that the title to said land be vested in the plaintiffs and that they be decreed the possession thereof, as the heirs at law of said Elias Barnes, deceased.

The evidence shows that the deed sought to be set aside was made and delivered June 8, 1891, and filed for record on

the thirteenth of the same month; that the grantor lived on the lands described in said deed, together with his wife, Sallie Barnes, and her daughter by a former marriage, Flora Statts, and her husband, until his death, which occurred in the latter part of the year 1893; that the petition in this case was not filed until the eighth day of May 1899, and that the female plaintiffs herein are the sole heirs at law of said Elias Barnes deceased; that the said Elias Barnes was deaf and dumb, although some of the witnesses say that he could mumble out some words so as to be understood; that he was reasonably familiar with sign language, although he had never attended a college for the deaf and dumb; that he could converse with his neighbors, and other persons, who were familiar with him, by means of signs, and knew something of the sign language; that it was his custom to look after his own affairs, but that for some ten or twelve years previous to the execution of the deed in question and previous to his marriage with the defendant, Sallie Barnes, his sister, Mrs. Haggard, would generally assist him in his transactions with strangers who knew nothing of him or how to communicate their wants by signs.

C. B. Atkins, the justice of the peace, who wrote the deed in question and took the acknowledgment of Elias Barnes thereto, lived on an adjoining farm for eleven years previous to writing the deed, and during all that time it was his custom to converse with said Elias Barnes frequently, and he testified that he could understand Barnes and that Barnes could understand him; that the deed was written at Barnes's request, and that he understood thoroughly how Barnes wished the deed written, and that he wrote it as Barnes directed, and that Barnes fully understood the provisions of the deed after it was written, and assented thereto.

Samuel Mays, another neighbor, who lived on an adjoining farm, also testified that he could converse with said Barnes and that he had frequently held conversations with

him by means of signs; that Barnes was an intelligent man and usually looked after his own business; that Barnes had told this witness before making the deed in question how he intended to make it, and after it had been made and executed told him how he had made it, and that it was as the deed had been written.

John Statts, who was present when the deed was written and acknowledged, and who could talk with deaf and dumb persons by means of signs (having had two brothers who were deaf and dumb), testified that he saw Barnes communicating to the justice how he wished the deed written, and after the justice of the peace wrote the deed as directed, says that he saw the justice explain the provisions of the deed as it was written, and that it was as Barnes had directed, and that Barnes assented thereto, and signed and acknowledged it. Many others of Mr. Barnes's neighbors testified that he was intelligent and fully capable of cummunicating his wishes by means of signs, to those with whom he was acquainted, and those who understood the art of receiving communication by sign.

Witnesses for plaintiff, on the other hand, testified that Elias Barnes was a man of very limited capacity; that he could communicate with those with whom he was acquainted only in a most limited way and only about the most simple affairs of everyday life; that he had never been educated in the sign language; that he was not in the habit of transacting his own business, involving communication with the outside world, except through his sister, Mrs. Haggard. Several of these witnesses stated that they did not think it was possible to make Barnes understand the deed as written, by means of signs, although they admitted that they could make him understand some business transactions, but were unable to have him fully understand all they wished to communicate, even about simple business matters. The evidence also shows that the defendant, Sallie Barnes, the wife of Elias Barnes, was

deaf and dumb; that she had been previously married, and that her daughter, Flora Statts, mentioned in this deed, was deaf and dumb; that the defendants, Frankie Statts and Price Statts, are the children of said Flora Statts; that the defendant Jacob Statts was the husband of said Flora Statts now deceased.

Upon the facts as presented to the court, judgment was entered for the defendants, dismissing plaintiffs' bill, and after an unsuccessful motion for a new trial, they have brought the case here for review. There is absolutely no evidence in the record to support the allegation that the deed sought to be set aside was procured by the fraud of the defendant, Sallie Barnes, or for that matter, by any one; and as all the facts bearing upon the question of the capacity of the grantor, Elias Barnes, to comprehend and understand the meaning of the deed executed by him, have been fully heard by the trial court and found adversely to the contentions of appellants, there does not seem much before the court, at this time, but to affirm the finding of the trial court.

Though this court has the right to review the testimony, and to reverse the judgment which the trial court has made thereon in cases of this character, it is a right seldom exercised, where, as here, all the witnesses testifying pro and con upon the disputed issue involved, were in person before the court, with the opportunity in that court, not only of hearing what was said, but of studying and knowing the manner and character of the witnesses before it, which this court does not possess.

There is abundance in the testimony given by defendant's witnesses, if believed by the court, to have justified the finding that the grantor, Elias Barnes, knew how to express his wishes concerning the manner of the disposition of his property, as was done, by this deed, and that the justice of the peace who wrote the deed for him, got his idea correctly, before writing it, and afterwards accurately conveyed to the

grantor Barnes the purport of the deed before it was signed, as also a contrary view might have been found, if the court had believed the witnesses called in behalf of plaintiffs.

Appellant does, however, make the further point, that as the grantor in the deed in controversy was shown to have been a deaf mute, that fact was prima facie evidence, at least, that he was incapable of understanding the meaning of or to make the deed in question, and that the burden of showing his competency in this regard was upon defendants.

Be that presumption as to the grantor's capacity as it may, there is nothing in the record before us to indicate that the trial court might not have construed the law in its application to the facts of this case as appellant asserts it to be. No demurrer was sustained to the evidence as offered by the appellant, nor was plaintiff's bill dismissed upon the evidence alone of their own witnesses, or upon the ground that they did not make out a prima facie case, or upon the ground that the fact of Barnes being deaf and dumb, was not prima facie evidence of his want of capacity to make the deed; but the court heard all the testimony offered by both plaintiffs and defendants touching the question of the qualification of the grantor Barnes and of his capacity to understand the full purport and meaning of the deed, which he did sign and acknowledge, with all the other facts offered in evidence by both parties, and upon all the testimony before it, found the issue for defendants, as in our judgment it very properly might have done upon the great preponderance of the testimony.

The question, after all the testimony had gotten before the court, was one as to the *quantum,* not one as to the *onus* of proof. The former being determined by the court, the latter was then a matter of no concern. The judgment having been found in favor of the defendants upon the weight of the evidence, and no error of law appearing to have been made by the trial court in reaching that conclusion, it is ordered affirmed by this court. All concur.